UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In re:<br><br>HIBEL REALTY, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 08-13697 (WCH) |
|---|---|

### MOTION OF LBM FINANCIAL, LLC TO DISMISS CHAPTER 11 PROCEEDING, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY AND FOR LEAVE TO FORECLOSE MORTGAGE

LBM Financial, LLC ("LBM"), the holder of a first mortgage on the real property located at 337-345 Main Street, Barnstable, Massachusetts (the "Property") the sole assets of the Debtor, Hibel Realty, LLC (the "Debtor"), moves this Honorable Court to dismiss this bankruptcy proceeding for cause pursuant to 11 U.S.C. § 1112(b). The Debtor's voluntary Chapter 11 petition (the "Petition") was filed by Robert M. Bradley who purports to be the Manager of the Debtor with authority to file the Petition. However, Bradley (1) is not the manager of the Debtor and has no authority to act on its behalf; (2) is not a member of the Debtor, but merely holds a contingent ownership interest which has not yet vested; and (3) failed to obtain the consent of the actual holder of 100% of the membership interests, Vincent DiMento (who is also the sole manager), to file the Petition in violation of the requirements of the Debtor's Operating Agreement. The Debtor's bankruptcy case was filed by an individual who lacked the authority to file the Petition and in a bad faith attempt to hinder and delay LBM's efforts to conduct a foreclosure sale and recover the amounts due under a debt for which that individual is personally liable. Because the filing was without authority and in bad faith, this bankruptcy proceeding should be dismissed for cause pursuant to 11 U.S.C. § 1112(b).

In the event that the Court finds that dismissal is not warranted, LBM moves, in the alternative, for relief from the automatic stay for cause, pursuant to 11 U.S.C. § 362(d)(1), to allow it to foreclose its mortgage on the Property. In further support of the relief sought in this Motion, LBM states as follows:

## I. BACKGROUND

### A. Bradley Lacks Corporate Authority To Sign The Petition As DiMento Is The 100% Owner Of The Debtor And The Sole Member Of The Debtor's Board Of Managers And Did Not Authorize The Bankruptcy Filing

1. The Debtor was organized on or about July 18, 2003, pursuant to an Operating Agreement ("Operating Agreement"), executed by Robert M. Bradley and Bernard J. Laverty, Jr. ("Laverty"), the original members of the Debtor. See the Affidavit of Vincent J. DiMento (hereinafter "DiMento Affidavit") at ¶ 5 and Exhibit A (Operating Agreement).

2. Pursuant to the Debtor's Operating Agreement, the business and affairs of the Debtor were to be managed by the Board of Managers. When the Debtor was formed, Laverty was the sole member of the Board of Managers. See DiMento Affidavit at ¶ 5 and Ex. A (Operating Agreement).

3. On January 20, 2006, Bradley and Laverty transferred their entire membership interest in the Debtor to Vincent J. DiMento pursuant to a Memorandum of Agreement ("2006 Agreement"). See DiMento Affidavit at ¶ 6 and Ex. B (2006 Agreement).

4. When they executed the 2006 Agreement, Bradley and Laverty also each executed a Membership Interest Transfer Instrument, confirming "the sale, assignment and transfer unto Vincent J. DiMento of all of [their] fifty percent (50%) membership interest in Hibel Realty LLC ... standing in [their] name...." See DiMento Affidavit at Ex. B (Membership Interest Transfer Instrument).

2

5. On March 17, 2006, the Debtor executed and delivered to LBM a promissory note in the original principal amount of $1,330,000.00 (the "Note"). Also on that date, the Debtor granted LBM a mortgage on the Property as security for the Note.

6. On March 16, 2006, a Certificate of Amendment was filed with the Massachusetts Secretary of State's Office ("2006 Certificate of Amendment") to reflect the change in the Debtor's corporate structure achieved through the 2006 Agreement. See DiMento Affidavit at ¶ 8 and Ex. C (2006 Certificate of Amendment).

7. Pursuant to the 2006 Certificate of Amendment, Laverty was removed as the resident agent and manager of the Debtor and DiMento was named the resident agent and manager. Additionally, the Debtor's principal place of business was changed from 314 West Second Street, South Boston, Massachusetts to 7 Faneuil Hall Market Place, Boston, Massachusetts, the place of business of DiMento. See DiMento Affidavit at ¶¶ 7-8 and Ex. C.

8. As a result of the execution of the 2006 Agreement, Bradley and Laverty have no present ownership interests in the Debtor, but instead have an unvested future interest in the Debtor ("Unvested Future Interests"). In accordance with the terms of the 2006 Agreement, these interests would vest only upon the satisfaction of two conditions (the "Conditions"): that the Debtor obtain certain construction-related permits and that the loan to LBM be paid in full through a refinance. See DiMento Affidavit at ¶ 9 and Ex. C.

9. The Conditions have not been met because LBM's debt has not been satisfied. Although the Debtor did refinance the original Note with a second note executed and delivered to LBM, Bradley and Laverty specifically agreed that the transaction would not constitute a refinance as required by the 2006 Agreement. See Exhibit A hereto (Acknowledgement and Consent).

3

10. Consequently, because the second note remains outstanding, the Unvested Future Interests of Bradley and Laverty remain wholly unvested. See id.

11. At present, Bradley is not a member of the Debtor and holds no equity, membership or other vested ownership interest in the Debtor. See DiMento Affidavit at ¶ 10.

12. At present, DiMento is the sole member, manager, and member of the Board of Managers of the Debtor, as defined in the Operating Agreement. See DiMento Affidavit at ¶¶ 2, 7.

### B. LBM Holds A Mortgage On The Debtor's Property As Well As A Security Interest In The 100% Membership Interest Held By DiMento And The Future Unvested Interests Held By Bradley And Laverty

13. On February 16, 2007, the Debtor executed and delivered to LBM a second promissory note in the original principal amount of $3,530,000.00 (the "Second Note"), which satisfied the amounts due and owing by the Debtor to LBM under the Note, satisfied other outstanding debt to LBM and provided additional working capital to the Debtor.

14. On February 16, 2007, to secure the Debtor's obligations to LBM under the Second Note, the Debtor granted LBM a first mortgage (the "Mortgage") in the Property pursuant to a Mortgage and Security Agreement recorded with the Barnstable County Registry of Deeds in Book 21804, Page 278 and the Barnstable County Registry District of the Land Court as Document No. 1,057,223 as noted on Certificate of Title No. 169924. See Debtor's Schedule D; Exhibit B hereto (Mortgage and Security Agreement).

15. Additionally, on February 16, 2007, Bradley, Laverty, and DiMento each executed a Guaranty pursuant to which they guaranteed the full and prompt payment to LBM of all amounts due by the Debtor under the Second Note.

16. To further secure the Debtor's obligations to LBM, on February 16, 2007, Bradley and Laverty each executed Rights To Unvested Future Membership Interest Pledge

4

Agreement ("Pledge Agreement") pursuant to which they pledged and delivered to LBM the "unvested future rights to equity interests presently owned by Vincent J. DiMento in Hibel Realty, LLC," which they retained under the 2006 Memorandum. See Exhibit C hereto (Right to Future Unvested Membership Interest Pledge Agreement).

17.     On February 16, 2007, DiMento executed a Pledge of Member Interests ("Member Interest Pledge Agreement"), pursuant to which he pledged and granted a security interest to LBM in one hundred percent (100%) of the issued and outstanding membership interests of the Debtor as security of all of DiMento's obligations under the Guaranty. See Exhibit D hereto (Pledge of Membership Interest).

18.     The Second Note matured on February 16, 2008, but the Debtor and the Guarantors failed, refused and neglected to satisfy their obligations to LBM under the Second Note and Guaranty and the full amount due under the Note remains unpaid.

19.     As of April 18, 2008, the Debtor owed LBM $3,989,721.83 consisting of principal, interest and fees under the Second Note, plus all interest and fees accruing thereafter, plus attorneys' fees and costs. LBM has received no payment since that time.

20.     As a result of the Debtor's default under the Second Note, LBM pursued foreclosure of its Mortgage by scheduling a public auction sale of the Property for May 21, 2008. When it learned of the Bankruptcy, LBM continued the foreclosure sale to July 23, 2008. LBM has requested and been granted relief from stay to further continue the foreclosure sale to September 10, 2008.

21.     In addition to pursuing foreclosure of its mortgage, LBM also pursued Bradley for the amounts due under his guaranty. On June 17, 2008, LBM obtained a Judgment by Default against Bradley in the amount of $18,434,116.90 from the Middlesex Superior Court, a portion

of which represents his personal liability for the full amount due under his guaranty. See Exhibit E hereto (Judgment by Default).

### C. Bradley, Without Knowledge And Authority Of The Debtor's Members And Board Of Managers, Appointed Himself Manager and Filed the Bankruptcy Petition

22. On May 20, 2008, Bradley filed a Certificate of Amendment with the Massachusetts Secretary of State's Office ("2008 Certificate of Amendment") pursuant to which he unilaterally named himself as the manager of the Debtor and changed the Debtor's principal address to 1287 Old Post Road, Marstons Mills, Massachusetts. See DiMento Affidavit at Ex. D (2008 Certificate of Amendment).

23. Bradley had no authority to take this action on behalf of the Debtor.

24. Pursuant to ¶ 3.1 of the Operating Agreement, only the Board of Managers has "full and complete authority, power and discretion to make any and all decisions ... necessary to accomplish the business and objectives of the Company." See DiMento Affidavit at Ex. A.

25. Further, pursuant to ¶ 10.5 of the Operating Agreement, there can be no amendments to the Operating Agreement "except by the unanimous written agreement of all of the Members." Pursuant to ¶ 1.9(d) of the Operating Agreement, "no other document or oral agreement among the Members shall be treated as part of or superseding this [Operating] Agreement unless it expressly so provides, is reduced to writing and has been signed by all of the Members." See Id.

26. The amendments and the filing of the 2008 Certificate of Amendment were not authorized by DiMento, the sole member of the Debtor and the sole member of the Board of Managers. The Debtor's governing body executed no documents to lawfully authorize any such amendments. In fact, Bradley failed to give the members and the Board of Managers of the

Debtor any notice that he was filing the 2008 Certificate of Amendment, and the members only learned about it after the fact. See DiMento Affidavit at ¶¶ 13-14.

27. On May 21, 2008, Bradley signed and filed the Voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code commencing this proceeding. See Petition.

28. Pursuant to ¶ 3.3(j) of the Operating Agreement, only a member of the Board of Managers has the authority to file a voluntary petition in bankruptcy on behalf of the Debtor and only "upon the unanimous vote of all of the Members owning 100% of the Percentage Interests." See DiMento Affidavit at Ex. A.

29. The Board of Managers did not authorize the filing of the Debtor's Petition, nor has there been a unanimous vote by all of the members of the Debtor to file such a petition. See DiMento Affidavit at ¶ 15.

30. Pursuant to ¶ 3.3(h) of the Operating Agreement, only a member of the Board of Managers has the authority to employ legal counsel "to perform services for the Company and to compensate them from Company funds." See DiMento Affidavit at Ex. A.

31. The Board of Managers did not authorize the hiring of Attorney Frederick J. Watson or the law firm of Dunbar Law P. C. See DiMento Affidavit at ¶ 16.

32. DiMento, as the sole member of the Board of Managers and the 100% owner of the Percentage Interests of the Debtor, did not authorize Attorney Frederick J. Watson or the law firm of Dunbar Law P. C., to act on the Debtor's behalf or to file the Voluntary Petition. See Id.

**D.    Debtor's Sole Asset Is The Property**

33. The Debtor is a single assets real estate entity as that phrase is defined in 11 U.S.C. § 101(51B)). Its sole asset is the Property. See Debtor's Schedules A-B.

34.     There are no monies or other cash flow generated from the Property and no other assets or proceeds to pay for any obligations, including the Chapter 11 administrative costs and the United States Trustee quarterly fees. See Debtor's Statement of Financial Affairs.

## II. ARGUMENT AND AUTHORITIES

**A.     The Bankruptcy Must Be Dismissed For Cause under 11 U.S.C. 1112 (b)**

Upon a finding that cause exists, a bankruptcy court shall dismiss a Chapter 11 proceeding or convert it to a Chapter 7 proceeding, whichever is in the best interests of the debtor's creditors. See 11 U.S.C. § 1112(b)(1). Pursuant to 11 U.S.C. § 1112(b) a party in interest may bring a motion to dismiss a Chapter 11 case. See 11 U.S.C. § 1112(b). A party in interest under 28 U.S.C. § 1109(b), includes creditors and creditors have standing to bring a motion to dismiss. 28 U.S.C. § 1109(b); see also In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991) (affirming grant of creditor's motion to dismiss chapter 11 case and finding that the creditor, as a party in interest under § 1109(b), has standing to bring motion to dismiss under § 1112(b)); In re Orchard at Hansen Park, LLC, 347 B.R. 822, 823 (Bankr. N.D. Tex. 2006) (creditor had standing to bring a motion to dismiss unauthorized bankruptcy petition filed by an individual who was no longer the debtor's manager where the operating agreement required the consent of all members to authorize filing of a petition).

### 1.     The Bankruptcy Case Must Be Dismissed Because Bradley Had No Authority To File It

The Court should dismiss this bankruptcy case because Bradley had no authority to commence it on behalf of the Debtor. "The decision to initiate a voluntary bankruptcy case on behalf of a corporation must be made by those persons having the power of managing the corporation." AMG Res., Inc. v. Indus. Concerns, Inc. (In re Indus. Concerns, Inc.), 289 B.R. 609, 617 (Bankr. W.D. Pa. 2003) (dismissing chapter 11 petition filed by the corporate president

because the filing of a bankruptcy petition was not an ordinary business affair and had to be first approved by the board of directors), *citing* Price v. Gurney, 324 U.S. 100, 104 (1945); see also In re Milestone Educ. Inst., 167 B.R. 716, 720 (Bankr. D. Mass. 1994) ("the authority to file a bankruptcy petition depends upon the corporate documents and state law"). The U.S. Supreme Court has explained that:

> Under the Bankruptcy Act the power of the court to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims is strictly limited to those situations where a petition has been approved.... But nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation.

Price, 324 U.S. at 106; see also In re J&J Prop. Holdings, LLC, 2004 Bankr. Lexis 2543, 4-5 (Bankr. W.D.N.C. 2004) (dismissing bankruptcy petition because person who signed it as president was not the president or officer of the LLC and the members did not authorize the petition); In re Elgin's Paint & Body Shop, Inc., 249 B.R. 110 (Bankr. D.S.C. 2000) (dismissing case where corporate president filed bankruptcy petition unilaterally and without authority).

Vincent DiMento is the sole manager and sole member of the Debtor. See DiMento Affidavit at ¶¶ 2, 8, 10, 12. Pursuant to the Debtor's Operating Agreement, only the Board of Managers has authority to act on behalf of the Debtor and DiMento is the sole member of that board. See DiMento Affidavit at ¶ 5. Also pursuant to the Debtor's Operating Agreement a unanimous vote of all of the members of the Debtor is required to commence a bankruptcy petition on the Debtor's behalf. See DiMento Affidavit at ¶ 15. At no time did DiMento, the sole member of the Debtor, authorize any one to commence a bankruptcy petition on behalf of the Debtor. See Id. As such, Bradley had absolutely no authority to act on behalf of the Debtor or to commence this proceeding. Thus, this proceeding must be dismissed as a matter of law.

See In re Stavola/Manson Elec. Co., Inc., 94 Bankr. 21, 24 (Bankr. D. Conn. 1988) (dismissing petition where the debtor's president was not given the authority to file the petition by the corporate directors).

### 2. Even if Bradley Had Been Authorized to file the Petition, The Debtor's Bankruptcy Petition Must Be Dismissed For Bad Faith Pursuant To 11 U.S.C. §§ 1112(b)

The facts of this case, including that the Debtor filed the Petition in order to avoid foreclosure, establish that even if Bradley had authority to act on behalf of the Debtor, the Debtor exhibited a lack of good faith in filing the petition such that sufficient cause exists to warrant dismissal of the Debtor's case pursuant to § 1112(b). See In re Bryan, 104 B.R. 554, 557 (Bankr. D. Mass. 1989) ("Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate" *quoting* In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984); In re G-2 Realty Trust, 6 B.R. 549, 553-54 (Bankr. D. Mass. 1980) (petition was dismissed where the sole purpose of the filing was a bad faith attempt to prevent or delay secured creditor's imminent foreclosure sale of substantially all of debtor's property); In re Harvey Road Assoc., VIII, 140 B.R. 302, 305 (Bankr. D. Mass. 1992) ("lack of a good faith filing is cause for dismissal").

In In re Bryan, the Court looked to, *inter alia*, the following factors, applied by the court in In re Wentworth, 83 B.R. 705 (Bankr. D.N.D. 1988), to determine whether a lack of good faith existed to warrant dismissal under § 1112(b):

- "The debtor has few or no unsecured creditors";
- "The pre-petition conduct of the debtor has been improper";
- "There are few debts to non-moving creditors";

- "The petition was filed on the eve of foreclosure";

- "The foreclosed property is the sole or major asset of the debtor";

- "The debtor has no ongoing business or employees";

- "There is no possibility of reorganization;

- "The debtor's income is not sufficient to operate";

- "Reorganization essentially involves the resolution of a two party dispute";

- "The debtor filed solely to create the automatic stay".

In re Bryan, 104 B.R. at 558, *quoting* In re Wentworth, 83 B.R. 705 (Bankr. D.N.D. 1988).

An analysis of these factors warrants a finding of lack of good faith such that the proceeding must be dismissed. Here, the Debtor has only six unsecured creditors whose claims total $105,030.00, a mere fraction of the $5,585,599.00 in total claims listed on the Schedules. See Schedule F; Summary of Schedules. None of the unsecured creditors have appeared or taken any action in this bankruptcy, and only one has filed a proof of claim.

In addition, Bradley is personally liable to LBM for the debt LBM sought to enforce through the foreclosure. Thus, it is in Bradley's interest to stall any enforcement action by LBM in part through commencing this action. Further, the Property is the only asset of the Debtor, the Debtor's sole purpose was to develop the Property and the Debtor conducts no other business and has no employees. See Schedules A-B. The Debtor generates no income and will not have any revenue to pay either the administrative expenses or to fund a plan of reorganization absent significant additional financing. See Statement of Financial Affairs. Based on an analysis of the factors cited by In re Bryan, 104 B.R. at 558 a finding of lack of good faith is warranted such that the petition should be dismissed. In re G-2 Realty Trust, 6 B.R. at 554 (granting motion to

dismiss where the petition was not filed for any legitimate business purpose or in an attempt to facilitate a reorganization, but was meant to merely prevent foreclosure).

B. **In the Alternative, LBM Is Entitled To An Order For Relief From The Automatic Stay For Cause Pursuant To 11 U.S.C. § §362(d)(1)**

If this Court does not dismiss this proceeding, pursuant to 11 U.S.C. § 1112(b), LBM is entitled to relief from the automatic stay for cause pursuant to 11 U.S.C. §362(d)(1). Under 11 U.S.C. § 362(d)(1) a party in interest can be granted relief from the automatic stay if it establishes cause. See 11 U.S.C. § 362(d)(1). Cause pursuant to 11 U.S.C. §362(d)(1) includes a lack of good faith in the Debtor's filing. See In re Laguna Assocs. Ltd. Pshp., 30 F.3d at 738 (stay lifted because debtor's eleventh hour petition on the eve of foreclosure constituted bad faith); In Re Spectee Group, Inc., 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995) ("Bad faith exists where the debtor lacks any realistic possibility of reorganization and files the petition for the sole purpose of frustrating or delaying its secured creditor's efforts to enforce its legitimate rights").

The factors used to analyze bad faith pursuant to 11 U.S.C. §362(d)(1) are the same as those used to analyze bad faith under 11 U.S.C. §1112(b), although in certain instances relief from stay, as a result of lack of good faith, may be warranted where dismissal is not. See In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1027 (11th Cir. Ala. 1989).

As a result of the reasons cited above, if this proceeding is not dismissed, LBM should be granted relief from stay to pursue its rights under the Mortgage. It is apparent that the sole reason for the Debtor's bankruptcy was to avoid the foreclosure of LBM's mortgage. LBM is also the only creditor of the Debtor that has appeared or taken any action in this proceeding. Further, the Debtor has no assets other than the Property, no income and no employees. The Property is the only asset of the Debtor available to satisfy the Debtor's obligations to LBM and to its other creditors. The Debtor generates no income and the $4,500,000.00 value which the

Debtor attributes to the Property is not supported by any offer to purchase or other independent source. Because the Debtor has filed this action in bad faith and solely to avoid LBM's exercising of its rights and remedies under the Mortgage, LBM should be granted relief from stay.

### III. CONCLUSION

As demonstrated herein, the Debtor had no authority to file its voluntary petition and the petition was filed in bad faith. As such the case should be dismissed for cause pursuant to 11 U.S.C. § 1112(b). Alternatively, LBM requests relief from stay to allow it to exercise any and all of its contractual and state law rights and remedies against the Debtor to foreclose the Mortgage upon the Property and for such other and further relief as this court deems necessary.

WHEREFORE, LBM Financial, LLC, prays that this Court enter an Order:

1. Dismissing the Chapter 11 case of Hibel Realty, LLC;

2. In the alternative, enter an order substantially in the form of the proposed order attached hereto as Exhibit 1, (a) approving this Motion and granting LBM, its successors and/or assigns, relief from the automatic stay for the purpose of: (i) exercising its rights under the Mortgage and under applicable state law, including, without limitation, taking possession of the Property and/or foreclosing or accepting a deed in lieu of foreclosure of the Mortgage; (ii) preserving its right to seek any deficiency to the extent permitted by state and federal law; and (iii) serving all appropriate notices in connection with these actions and bringing such further actions, including, without limitation, summary process proceedings, as are permissible by law; and

3. Granting such other and further relief as may be just and proper.

                    Respectfully submitted,

                    LBM FINANCIAL, LLC,

Dated: July 18, 2008

                    */s/ Meegan B. Casey*
                    Jeffrey D. Ganz (BBO #564375)
                    Meegan B. Casey (BBO #648526)
                    Riemer & Braunstein LLP
                    Three Center Plaza
                    Boston, Massachusetts 02108
                    (617) 523-9000

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In re:<br><br>HIBEL REALTY, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 08-13697 (WCH) |
|---|---|

## ORDER GRANTING MOTION OF LBM FINANCIAL, LLC FOR RELIEF FROM THE AUTOMATIC STAY AND <u>LEAVE TO FORECLOSE MORTGAGE</u>

This matter having come before this Court upon the Motion to Dismiss or In the Alternative for Relief from the Automatic Stay and Leave to Foreclose Mortgage (the "Motion"),[1] filed by LBM Financial, LLC, and after full consideration, it is hereby ordered that the Motion is granted, and LBM Financial, LLC, its successors and/or assigns, may (a) exercise its rights under its Mortgage and under applicable law, including, without limitation, taking possession of the Property and/or foreclosing or accepting a deed in lieu of foreclosure of the Mortgage; (b) preserve its right to seek any deficiency to the extent permitted by state and federal law; and (c) serve all appropriate notices in connection with these actions and bring such further actions, including, without limitation, summary process proceedings, as are permissible by law.

Date:_____                              _____
                                                             Honorable William C. Hillman
                                                             United States Bankruptcy Judge

1083235.2

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.